**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **JEFFERY T. HILL,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **Case no. 4:13cv0174 TCM** |
| ) | |
| **DEAN MINOR,**[1] ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM AND ORDER

Jeffery T. Hill ("Petitioner"), who is a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a conviction following a jury trial.  See 28 U.S.C. § 2254.

In that petition, Petitioner pursues seven grounds for relief based on his trial attorney's allegedly ineffective assistance of counsel, and requests an evidentiary hearing.  After considering the record of the underlying state court proceedings, the parties' arguments, and applicable law, the Court will deny the petition because Petitioner's first six claims are procedurally barred from consideration on their merits and the seventh ground is without merit.[2] Additionally, the Court will deny the request for an evidentiary hearing.

Because the identity of the minor victims is disclosed throughout the underlying state court record, the state court record will be placed and maintained under seal.

## Background

---

[1]  Petitioner advised the Court that he is now at the Moberly Correctional Center ("MCC").  The Court will, therefore, substitute Dean Minor, the warden of MCC, for the originally named Respondent.  See Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

[2]  The case is before the undersigned United States Magistrate Judge by written consent of the parties.  See 28 U.S.C. § 636(c).

In 2005 Petitioner was charged by indictment with two counts of first-degree statutory rape, in violation of Mo. Rev. Stat. § 566.032[3] and one count of incest in violation of Mo. Rev. Stat. § 568.020[4] for having sexual intercourse, between July 14, 2003, and July 17, 2004, with two girls who were alleged to be under twelve years old. (Indictment, Legal File, Resp't Ex. C, at 9 and 10 [Doc. 11].) One of the girls was Petitioner's daughter. If it is necessary to refer to the girls, the Court will refer to them by their initials, M.S. and T.H.

At the trial in January 2008, the jury found Petitioner guilty of all three counts. (Verdicts, id. at 49-51.) On February 29, 2008, the trial court sentenced Petitioner to concurrent terms of imprisonment of ten years on each of the two statutory rape offenses and four years on the incest offense. (Sentence and Judgment, id. at 66-68.)

---

[3] The first-degree statutory rape statute in Missouri provides that

1. A person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old.

2. Statutory rape in the first degree . . . is a felony for which the authorized term of imprisonment is life imprisonment or a term of years not less than five years, unless in the course thereof the actor inflicts serious physical injury on any person, displays a deadly weapon or dangerous instrument in a threatening manner, subjects the victim to sexual intercourse or deviate sexual intercourse with more than one person, or the victim is less than twelve years of age in which case the authorized term of imprisonment is life imprisonment or a term of years not less than ten years.

Mo. Rev. Stat. § 566.032.

[4] The state statute defining the incest offense provides, in relevant part, that:

1. A person commits the crime of incest if he . . . engages in sexual intercourse or deviate sexual intercourse with a person he knows to be, without regard to legitimacy:

   (1) His ancestor or descendant by blood or adoption . . . .

2. Incest is a class D felony.

Mo. Rev. Stat. § 568.020.

In his direct appeal, Petitioner presented two points alleging plain error, one based on alleged juror misconduct and one based on allegedly improper closing argument by the prosecutor. (Pet'r Br., Resp't Ex. D.) The Missouri Court of Appeals for the Eastern District of Missouri affirmed the trial court's judgment in a summary order, supplemented by a memorandum, sent only to the parties, setting forth the reasons for the decision. (Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Mar. 10, 2009, Resp't Ex. F.)

After he filed a timely pro se post-conviction motion under Mo. S. Ct. R. 29.15, Petitioner, through counsel, filed an amended post-conviction motion presenting seven claims that his trial attorney provided ineffective assistance of counsel, as well as a request for an evidentiary hearing. (Legal File, Resp't Ex. G, at 3-8 and 16-25.) First, Petitioner contended that his trial attorney "did not properly investigate, depose, or prepare for trial" with respect to the complaining witnesses in that he failed to depose those witnesses, which depositions "would have revealed that the[y] were not, in fact, abused." (Id. at 20.) In his second claim, Petitioner argued that his trial attorney failed "to highlight to the jury that DNA was not found and that the physical evidence was minimal." (Id.) For his third claim, Petitioner urged that he relied on his trial attorney's advice that "he was going to get probation, even if he was convicted. The State's offer was 10 years in the Department of Corrections but because there was no evidence, he would likely get probation." (Id.) For his fourth claim, Petitioner argued that his trial attorney "did not let [him] know that he had a choice between a jury and a bench trial"; and, if he had known, he would have elected a bench trial. (Id.) Petitioner's fifth claim was that his "jury was entirely white – trial counsel failed to conduct voir dire and the jury selection process in

such a manner as would have yielded a more balanced racial composition in the jury."  (Id.)
Next, Petitioner argued that his trial counsel failed "to call a forensic medical expert to counter
the State's medical expert who testified on the hymenal damage on M.S. in this case."  (Id. at 20-
21.)  For his seventh and final claim, Petitioner asserted that his trial attorney "failed to object to
the testimony by [Melissa H. ("Melissa")] that she confronted [Petitioner] when alerted to the
accusations made by M.S. and [T].H., and asked if that was what he had been doing the night she
[(Melissa)] allegedly saw [Petitioner] hovering over one of the couches that the girls (M.S. and
[T].H.) were sleeping on."  (Id. at 21.)

The post-conviction motion court denied Petitioner's request for an evidentiary hearing
and Petitioner's amended post-conviction motion.  (Conclusions of Law and Order, id. at 27-32.)
As to Petitioner's seventh claim, the motion court found "this claim is without merit because the
referenced conduct involved the same victims and it served to corroborate the victims' testimony
by showing opportunity and intent.  State v. Bernard, 849 S.W.2d 10, 14-17 (Mo. banc 1993)."
(Id. at 31-32.)

In his post-conviction appeal, Petitioner pursued one point.  (Pet'r Br., Resp't Ex. H.)
Petitioner contended his rights to due process and the effective assistance of counsel under the
Fifth, Sixth, and Fourteenth Amendments were violated when his trial attorney failed to object to
the admission of evidence that Petitioner "was caught 'hovering over' one of the victims one
night other than the charged incidents [which] evidence amounted to a prior bad act or uncharged
crime."  (Id. at 12, 13.)

The Missouri Court of Appeals for the Eastern District affirmed the motion court's denial
of Petitioner's post-conviction motion in a summary per curiam order, dated November 13, 2012,

explaining its decision in a memorandum sent only to the parties. (Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Nov. 13, 2012, Resp't Ex. J.) The state appellate court concluded: "Because the testimony at issue was admissible for a purpose other than to show [Petitioner]'s propensity to commit the act with which he was charged, and was not outcome determinative, we find no error and affirm the judgment of the motion court." (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Nov. 13, 2012, Resp't Ex. J at 2.) With respect to the factual and procedural history, the court found:

> Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. In July 2004, Nicole H. ("Nicole") was going out for the evening and needed someone to watch her six-year-old daughter, M.S. Nicole made arrangements for M.S. to spend the night at the home of Melissa H. ("Melissa") and [Petitioner], Nicole's sister and brother-in law. Melissa and [Petitioner] also had a six-year-old daughter, T.H. When Nicole told M.S. she would be staying at Melissa's house, M.S. repeatedly asked if she had to spend the night over there. Nicole asked M.S. why she did not want to stay there, and M.S. began crying. After Nicole asked M.S. several times why she did not want to stay at Melissa's house, M.S. told Nicole that her uncle, [Petitioner], had touched her private part and had put his private part in her private part.

> Upon arriving at Melissa's house, Nicole called Melissa outside and told her what M.S. had said. M.S. also told Melissa what happened. At that point, [Petitioner] came outside and asked what was going on. Melissa then confronted [Petitioner] about an incident that had occurred a few months earlier, when M.S. was again spending the night. On the night of that incident, Melissa had woken up to use the restroom and saw [Petitioner] standing over M.S., who was asleep on the couch. When Melissa asked [Petitioner] what he was doing, [Petitioner] said he was picking M.S. up because she was about to fall off the couch. Not believing [Petitioner]'s story, Melissa pulled back the covers and saw that M.S.'s underwear was pulled down. [Petitioner] said he did not do anything to her and that M.S.'s pants were already down before he picked her up. Melissa gave [Petitioner] the benefit of the doubt and did not tell Nicole about the incident.

> After confronting [Petitioner] about that previous incident, Melissa then called her own daughter outside and asked whether her father had ever done anything to her to make her feel uncomfortable. T.H. initially said no but eventually told her mother that [Petitioner] had put his "thing" on her. Nicole and

Melissa then took the girls to Cardinal Glennon Hospital where they were examined. A pediatric nurse practitioner found M.S. to have an abnormality of her hymen area that was consistent with penetrating trauma associated with sexual abuse. T.H. was not found to have any hymen abnormalities, but the examiner could not rule out sexual abuse. The hospital also called the State of Missouri Children's Division to investigate the abuse allegations. An investigator from Children's Division spoke with each girl separately. T.H. told the investigator her father had put his penis in her vagina four times, while M.S. told the investigator that [Petitioner] had put his penis in her vagina three times. Children's Division then referred the case to the St. Louis Metropolitan Police Department. A detective with the sex crimes unit interviewed T.H. and M.S. separately. M.S. told the detective that [Petitioner] put his private inside her private "lots of times." T.H. said someone touched her private part with his private part, but became so upset that the detective ended the interview before asking T.H. who touched her. M.S. told an interviewer with the Children's Advocacy Center of St. Louis that her uncle had put his private part on her private part on multiple occasions. T.H. denied being touched inappropriately by anyone when interviewed at the Advocacy Center.

[Petitioner] was indicted by a grand jury on two counts of first-degree statutory rape and one count of incest. At trial, M.S. and T.H. described the alleged sexual abuse by [Petitioner]. Both girls testified that [Petitioner] put his penis in their vagina on more than one occasion. Melissa also testified about the night she found [Petitioner] standing over M.S. while her underwear was down. Melissa described the incident in detail during direct examination, without objection, and answered further questions about that night on cross-examination by trial counsel. The prosecution also referenced the occurrence, without objection, during closing argument, stating:

> The mother then realizes . . . she realizes at that time and confronts [Petitioner] [who is] standing outside. Is that the reason why you were standing over her that one day? She didn't think anything of it at the time even though, when she walked in there and he explained to her why he was standing over her that day, she didn't buy it. And remember when she pulled back the covers, the little girl's panties were down. A light bulb went over in [her] head. That's why [Petitioner] was standing over that little girl. He was going in there to penetrate her again.

The jury found [Petitioner] guilty on all three counts. He was sentenced to 10 years for Count I, 10 years for Count II, and four years for Count III, all to be served concurrently in the Missouri Department of Corrections. This Court

affirmed [Petitioner]'s conviction on direct appeal in <u>State v. Hill</u>, 277 S.W.3d 892 (Mo [Ct.] App . . . 2009). [Petitioner] then filed an amended motiion for post-conviction relief claiming, among other points, that trial counsel failed to object to Melissa's testimony regarding the incident where she saw [Petitioner] hovering over M.S. while the girl was sleeping and her underwear was down. [Petitioner] argued such testimony was inadmissible evidence of a prior uncharged act to which his trial counsel should have objected. The motion court denied [Petitioner]'s motion for post-conviction relief without an evidentiary hearing, finding that Melissa's testimony regarding the prior incident was admissible because it served to corroborate the victims' testimony by showing opportunity and intent. This appeal follows.

(<u>Id.</u> at 2-5 (twentieth and twenty-first alterations in original).)

In discussing the sole point on appeal, the Missouri Court of Appeals stated

For relief based on claims of ineffective assistance of counsel, a movant must show by a preponderance of the evidence that counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and counsel's deficient performance prejudiced him. <u>Anderson v. State</u>, 196 S.W.3d 28, 33 (Mo. banc 2006) (<u>citing</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-92 (1984)).

In examining the performance prong of the <u>Strickland</u> test, "[i]t is presumed that counsel's conduct was reasonable and effective." <u>Anderson</u>, 196 S.W.3d at 33. A movant must overcome a strong presumption that trial counsel provided competent representation by demonstrating that counsel's representation fell below an objective standard of reasonableness. <u>Id.</u> To satisfy the prejudice prong of the <u>Strickland</u> test, a movant must demonstrate that there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. <u>Id.</u> A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

Counsel's failure to object to evidence is not sufficient by itself to constitute ineffective assistance of counsel. <u>Rotellini v. State</u>, 77 S.W.3d 632, 637 (Mo. [Ct.] App. . . . 2002). Rather, the movant must show that the objection would have been meritorious and the failure to object resulted in a substantial deprivation of movant's right to a fair trial. <u>Id.</u> The movant must also prove the failure to object was not strategic and was prejudicial. <u>West v. State</u>, 244 S.W.3d 198, 200 (Mo. [Ct.] App. . . . 2008).

Evidence of prior, uncharged criminal acts is never admissible to demonstrate the defendant's propensity to commit the crime with which he is presently charged.  State v. Primm, 347 S.W.3d 66, 70 (Mo. banc 2011); State v. Thurman, 272 S.W.3d 489, 495 (Mo. [Ct.] App. . . . 2008).  It is firmly settled, however, that evidence of the defendant's prior misconduct is admissible if it has "some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial."  Primm, 347 S.W.3d at 70 (quoting State v. Vorhees, 248 S.W.3d 585, 587 (Mo. banc 2008)).  Such evidence, therefore, may be admissible for the alternative purposes of establishing motive, intent, absence of mistake or accident, a common scheme or plan, or the identity of the person charged with the commission of the crime.  Thurman, 272 S.W.3d at 495.  Additionally, "evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible to present a complete and coherent picture of the events that transpired."  Primm, 347 S.W.3d at 70 (internal quotation omitted).

In child sex abuse cases, Missouri courts have allowed evidence of prior bad acts under three of the above mentioned five alternative purposes:  motive, identity, and common scheme or plan.  Thurman, 272 S.W.3d at 495.  "Numerous cases in Missouri involving sexual crimes against a child have held that prior sexual conduct by a defendant toward the victim is admissible as it tends to establish a motive, that is satisfaction of defendant's sexual desire for the victim."  Primm, 347 S.W.3d at 70.  See also State v. Schaal, 806 S.W.2d 659, 664 (Mo. banc 1991); State v. Graham, 641 S.W.2d 102, 105 (Mo. banc 1982); Thurman, 272 S.W.3d at 495; State v. Magouirk, 890 S.W.2d 17, 17 (Mo. [Ct.] App. . . . 1994); State v. Douglas, 797 S.W.2d 532, 533 (Mo. [Ct.] App. . . . 1990).

In this case, Melissa testified that she saw [Petitioner] standing over M.S. while she was sleeping and found the girl's underwear was down.  This evidence was admissible because it was relevant to establish [Petitioner]'s motive for committing the crime charged – that he had a sexual desire for M.S. and he intended to satisfy it.  See Thurman, 272 S.W.3d at 496.  Because prior sexual conduct by a defendant toward a child victim is admissible to establish a motive, an objection by trial counsel would not have been meritorious.  See Rotellini, 77 S.W.3d at 637.  As a result, we will not hold trial counsel ineffective for failing to object.  We acknowledge the motion court found that Melissa's testimony was admissible because it showed [Petitioner]'s intent.  However, intent is not, under Missouri law, one of the three admissible alternative purposes allowed in child sex abuse cases.  Nevertheless, we will not reverse a judgment where the court reaches the correct result even if for the wrong reason.  See Hays v. State, 360 S.W.3d 304, 310 (Mo. [Ct.] App. . . . 2012).  Because the testimony at issue was relevant to the issue of motive, the testimony was admissible.

Even if we found the testimony to be inadmissible, thereby warranting defense counsel's objection, [Petitioner] was not prejudiced by trial counsel's failure to object. In addition to Melissa's testimony regarding the uncharged incident, both M.S. and T.H. testified to multiple acts of sexual abuse by [Petitioner]. The State also presented testimony regarding the girls' physical examinations and their interviews with Children's Division, the police department, and the Children's Advocacy Center. Given the strength of the other evidence introduced at trial, we are not persuaded that the State's case was so tenuous that the exclusion of the questioned testimony would have been outcome determinative.

In conjunction with his argument regarding Melissa's testimony, [Petitioner] directs us to the portion of the State's closing argument in which the prosecutor claimed that [Petitioner] "was going in there to penetrate her again." [Petitioner] claims these words were not designed to show opportunity or intent as the motion court held. Rather, he alleges, the State emphasized this evidence during closing argument to prove [Petitioner]'s propensity to commit the charged crimes. [Petitioner] raises this issue for the first time on appeal. [Petitioner]'s motion for post-conviction relief did not raise any issues relating to the State's closing argument. Claims that were not presented to the motion court cannot be raised for the first time on appeal. <u>Amrine v. State</u>, 785 S.W.2d 531, 535 (Mo. banc 1990). Point denied.

<u>Conclusion</u>

After reviewing the record, we do not find that the motion court clearly erred in denying [Petitioner]'s motion for post-conviction relief. The judgment of the motion court is affirmed.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Nov. 13, 2012, Resp't

Ex. J at 6-9 (first alteration in original).)

The state appellate court issued its mandate on December 5, 2012. (<u>See</u> Mandate

attached to <u>id.</u>)

In his timely filed federal habeas petition, Petitioner asserts seven grounds for relief

based on his trial attorney's allegedly ineffective assistance of counsel. (Pet'r Pet'n [Doc. 1].) In

his first ground, Petitioner contends that his trial attorney "did not properly investigate, depose, or prepare for trial" with respect to the complaining witnesses in that he failed to depose those witnesses, which depositions "would have revealed that the[y] were not, in fact, abused." (<u>Id.</u> at 5.)  In his second ground, Petitioner argues that his trial attorney failed "to highlight to the jury that DNA was not found and that the physical evidence was minimal." (<u>Id.</u> at 6.)  For his third ground, Petitioner urges that he relied on his trial attorney's advice that "he was going to get probation, even if he was convicted.  The State's offer was 10 years in the Department of Corrections but because there was no evidence, he would likely get probation." (<u>Id.</u> at 8.)  For his fourth ground, Petitioner argues that his trial attorney "did not let [him] know that he had a choice between a jury and a bench trial"; and, if he had known, he would have elected a bench trial. (<u>Id.</u> at 10.)  Petitioner next contends that his "jury was entirely white – trial counsel failed to conduct voir dire and the jury selection process in such a manner as would have yielded a more balanced racial composition in the jury." (<u>Id.</u> at 23.)  Next, Petitioner argues that his trial counsel failed "to call a forensic medical expert to counter the State's medical expert who testified on the hymenal damage on M.S. in this case." (<u>Id.</u>)  For his seventh and final ground for relief, Petitioner asserts that his trial attorney "failed to object to the testimony by . . . Melissa . . . that she confronted [Petitioner] when alerted to the accusations made by M.S. and [T].H., and asked if that was what he had been doing the night [Melissa] allegedly saw [Petitioner] hovering over one of the couches that the girls (M.S. and [T].H.) were sleeping on." (<u>Id.</u> at 23-24.)

Respondent urges that the Court may not consider the merits of grounds one through six because they are procedurally barred. In particular Respondent maintains that Petitioner procedurally defaulted the claims in those grounds by not presenting them in his post-conviction appeal. Furthermore, Respondent argues, Petitioner has not demonstrated cause and prejudice or a miscarriage of justice to allow consideration of their merits. Respondent contends Petitioner's seventh ground for relief lacks merit.

### Discussion

Procedural Bar. Respondent argues that Petitioner's ineffective assistance of trial counsel claims in the first through sixth grounds for relief are procedurally barred and may not be considered on their merits.

It is well established that "[t]o be eligible for federal habeas corpus relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court." **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal quotation marks omitted) (quoting Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006)). "A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition." **Wemark v. Iowa**, 322 F.3d 1018, 1021 (8th Cir. 2003) (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996) (internal quotation marks and citations omitted). Importantly, "the prisoner must 'fairly present' his claim in each appropriate state court." **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). Claims that have not been fairly presented to the

state courts are procedurally defaulted.  See **Turnage v. Fabian**, 606 F.3d 933, 936 (8th Cir. 2010).

Missouri requires the raising of constitutional claims at the first available opportunity. See **In re J.M.N.**, 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); **In re T. E.**, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001).  Missouri Supreme Court Rule 29.15 provides the exclusive procedure by which a person convicted of a felony may pursue claims that his trial attorney provided ineffective assistance of counsel.  Mo. S. Ct. R. 29.15(a).  Claims that should have been but were not presented in an amended post-conviction motion or on appeal from a denial of a post-conviction motion are procedurally defaulted and may not be considered in a federal habeas proceeding.  See, e.g., **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (finding, in a post-conviction proceeding after a jury trial, that claims not presented in an amended post-conviction motion or in the appeal from the denial of that motion are procedurally defaulted).

Petitioner did not properly raise or fairly present in his post-conviction appeal the claims he now pursues as grounds one through six.  Rather, Petitioner asserted in his only point in that appeal a challenge to his trial attorney's failure to object to Melissa's testimony, a claim now pursued in ground seven.  Under the circumstances, Petitioner has procedurally defaulted the ineffective assistance of trial counsel claims presented in grounds one through six of his federal habeas petition.

Absent a showing of either cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court.

**Sawyer v. Whitley**, 505 U.S. 333, 338-39 (1992); accord **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims").  "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'"  **Maples v.   Thomas**, 132 S. Ct. 912, 922 (2012) (alterations in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).  There is no exhaustive catalog of the objective impediments, and the precise contours of the cause requirement have not been clearly defined.  **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).

Petitioner has not suggested or demonstrated any cause for the procedural default of the claims in grounds one through six.  No cause having been established, the Court does not need to address the prejudice element.  **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).  Under the circumstances, no cause and prejudice exists to allow consideration of the merits of Petitioner's procedurally defaulted claims in grounds one through six.

To the extent a "miscarriage of justice" may allow a federal habeas court to address the merits of a procedurally defaulted claim, Petitioner has not demonstrated the applicability of that exception either.  A miscarriage of justice exists if Petitioner shows that he is actually innocent.  See **Sawyer**, 505 U.S. at 339-40.  To establish actual innocence, Petitioner must provide new evidence and "show that 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'"  **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005)

(quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)); <u>accord</u> **House v. Bell**, 547 U.S. 518, 536-39 (2006) (<u>Schlup</u> standard applies to determine whether defaulted claims in a first federal habeas petition should be considered based on actual innocence). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting <u>Schlup</u>, 513 U.S. at 316).

Petitioner has not presented in this federal habeas proceeding any new evidence demonstrating that he is innocent. Therefore, Petitioner has not established a miscarriage of justice to allow the consideration of the merits of the procedurally defaulted claims in grounds one through six.

Concluding that the ineffective assistance of trial counsel claims in grounds one through six are procedurally barred from consideration on their merits, this Court will not further consider the merits of those grounds. The merits of ground seven will, however, be addressed because the claim in that ground was presented in Petitioner's post-conviction appeal. In that ground, Petitioner contends that his trial attorney "failed to object to the testimony by . . . Melissa . . . that she confronted [Petitioner] when alerted to the accusations made by M.S. and [T].H., and asked if that was what he had been doing the night [Melissa] allegedly saw [Petitioner] hovering over one of the couches that the girls (M.S. and [T].H.) were sleeping on."

<u>Standard of Review for Habeas Claim under 28 U.S.C. 2254.</u> "In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA")] to exercise only limited and deferential review of underlying state court decisions."

**Lomholt v. Iowa**, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams v. Taylor**, 529 U.S. 362, 413 (2000). If the state court's decision is not "contrary to" clearly established law, then the standard of "unreasonableness" applies and is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" **Williams v. Roper**, 695 F.3d 825, 831 (8th Cir. 2012) (quoting <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011)). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." **Taylor**, 529 U.S. at 407-08; <u>see</u> <u>also</u> **id.** at 413. "The unreasonable application inquiry is an objective one." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record

that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. **Greene v. Fisher**, 132 S. Ct. 38 (2011) (relying on <u>Cullen</u>, <u>supra</u>); <u>accord</u> **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." **Ryan v. Clarke**, 387 F.3d 785, 790 (8th Cir. 2004) (internal quotation marks omitted) (quoting <u>Jones v. Luebbers</u>, 359 F.3d 1005, 1011-12 (8th Cir. 2004)). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**,

382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels. **Smulls**, 535 F.3d at 864-65.

Ineffective Assistance of Counsel Claim. As noted earlier, in his seventh ground, Petitioner asserts that his trial attorney provided ineffective assistance of counsel by not objecting to Melissa's testimony "that she confronted [Petitioner] when alerted to the accusations made by M.S. and [T].H., and asked if that was what he had been doing the night [Melissa] allegedly saw [Petitioner] hovering over one of the couches that the girls (M.S. and [T].H.) were sleeping on." Respondent urges that this claim does not entitle Petitioner to relief because the basis of this claim involves an issue of state law, whether Melissa's challenged testimony was admissible; the state court found an objection to Melissa's challenged testimony would have been unsuccessful; this habeas court cannot re-examine a state court's determination of state law; and counsel cannot be ineffective for failing to make a meritless objection.

The Missouri Court of Appeals concluded Petitioner's trial attorney did not provide ineffective assistance of counsel by failing to object to Melissa's challenged testimony because the evidence was admissible to establish motive for committing the crime charged and any objection would not have been meritorious. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Nov. 13, 2012, Resp't Ex. J at 7-8.)

An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)). In **Strickland**, supra, the Supreme

Court established a two-part test for determining whether or not an attorney provided effective assistance of counsel. The petitioner must establish both deficient performance, i.e., that "counsel's representation fell below an objective standard of reasonableness," and prejudice, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, 466 U.S. at 687-88, 694. Importantly, to prevail on an ineffective assistance of counsel claim in a § 2254 habeas case, the petitioner

> must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under [28 U.S.C.] § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state appellate court] applied Strickland to the facts of his case in an objectively unreasonable manner.

**Bell v. Cone**, 535 U.S. 685, 698-99 (2002); **Underdahl v. Carlson**, 381 F.3d at 742 (8th Cir. 2004).

Petitioner's seventh ground for relief is based on his contention that his trial attorney provided ineffective assistance in failing to object to certain testimony provided by Melissa. "The admissibility of evidence, however, is a matter of state law." **Mendoza v. Leapley**, 5 F.3d 341, 342 (8th Cir. 1993) (per curiam). "Determinations of state law by the Missouri Court of Appeals are binding" in a federal habeas proceeding. **Crump v. Caspari**, 116 F.3d 326, 327 (8th Cir. 1997); see also **Estelle v. McGuire**, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Therefore, the Missouri Court of Appeals' decision that Melissa's challenged testimony was admissible to demonstrate motive for the charged offense involving M.S. is binding in this proceeding.

Based on the state appellate court decision, an objection to the admission of Melissa's challenged testimony would have lacked merit. An attorney does not provide ineffective assistance of counsel by failing to present an objection that lacks merit. **McReynolds v. Kemna**, 208 F.3d 721, 723 (8th Cir. 2000) (discussing an attorney's failure to present a Confrontation Clause challenge to admitted testimony); accord **Dodge v. Robinson**, 625 F.3d 1014, 1019 (8th Cir. 2010) (finding counsel's failure to present a double-jeopardy objection to a sentence did not constitute ineffective assistance because the objection lacked merit); **Thai v. Mapes**, 412 F.3d 970, 979 (8th Cir. 2005) (finding trial attorney "was not ineffective for failing to make" a meritless argument); **Gray v. Bowersox**, 281 F.3d 749, 756 n.3 (8th Cir. 2002) (noting that "a claim of ineffective assistance [of counsel] is not viable" where the underlying objection to evidence and argument that counsel failed to present "would have been without merit"). Therefore, Petitioner's contention that his trial attorney provided ineffective assistance of counsel in failing to object to Melissa's challenged testimony is without merit.

The Missouri Court of Appeals' decision affirming the motion court's denial of this ineffective assistance of counsel claim is not contrary to or an unreasonable application of clearly established federal law. Additionally, the state appellate court's findings related to this claim are supported by the evidence and are not unreasonable in light of the information available to the state court. See 28 U.S.C. § 2254(d)(2) (federal habeas relief may be granted if the state court adjudication of the merits of a habeas claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented to the state court).

Petitioner's seventh ground for relief is denied on its merits.

<u>Request for Evidentiary Hearing.</u>   In his federal habeas petition, Petitioner requests an evidentiary hearing.  (Pet'r Pet'n at 45.)

In most federal habeas proceedings, an evidentiary hearing is barred under the AEDPA. 28 U.S.C. § 2254(e)(2); <u>see</u> **Williams v. Norris**, 576 F.3d 850, 859-60 (8th Cir. 2009).  Even if a hearing is statutorily permitted, "the decision whether to grant or deny the requested hearing 'rest[s] in the discretion of the district court.'" **Crawford v. Norris**, 363 Fed. Appx. 428, 429-30 (8th Cir. 2010) (unpublished per curiam opinion) (quoting <u>Williams</u>, 576 F.3d at 860).   A hearing may be warranted where it would enable the habeas petitioner "to prove the petition's factual allegations which, if true, would entitle" the petitioner to relief.  **Id.** at 430 (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007)).  "If the factual allegations a petitioner seeks to prove would not entitle him to relief under the relevant standard, then an evidentiary hearing is not required." **Id.**

There is no need for an evidentiary hearing because, as the Court's discussion of Petitioner's grounds for relief discloses, Petitioner would not be able to prove factual allegations entitling him to federal habeas relief with respect to any ground for relief in his petition.

Petitioner's request for an evidentiary hearing is denied.

**Conclusion**

The Court denies Petitioner's federal habeas petition because grounds one through six are procedurally barred and ground seven is without merit.  Petitioner's request for an evidentiary hearing is  also denied.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Dean Minor, the warden of the MCC, is **SUBSTITUTED** as the Respondent in this federal habeas proceeding.

**IT IS HEREBY FURTHER ORDERED** that the underlying state court record [Doc. 11] shall be placed and maintained **UNDER SEAL**.

**IT IS FURTHER ORDERED** that Petitioner's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. 1] is **DENIED** without further proceedings.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue. 28 U.S.C. 2253.

A separate Judgment shall accompany this Memorandum and Order.


/s/  Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of December, 2015.